UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEVEN HALLAM,

              Plaintiff,

   v.                                                 Case No. 21-C-1190

NEENAH FOUNDRY COMPANY,

              Defendant.

## DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

Plaintiff Steven Hallam filed this action against Defendant Neenah Foundry Company, asserting claims for violations of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* (FMLA), and a claim for promissory estoppel under Wisconsin law. The Court has jurisdiction over Plaintiff's FMLA claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over his claim for promissory estoppel under 28 U.S.C. § 1367. Before the Court is Defendant's motion to dismiss. For the following reasons, the motion will be denied.

### LEGAL STANDARD

A motion to dismiss for failure to state a claim tests the sufficiency of the complaint. Rule 8 requires a pleading to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*, the Supreme Court clarified the standard for meeting this requirement, emphasizing the need for something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. 544, 555 (2007), or "an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. 662, 678 (2009), before the doors to expensive and time-consuming discovery will be opened. Though the Court recognized in *Twombly* the need for

caution before dismissing a case at the pleading stage before discovery has begun, it noted that "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." 550 U.S. at 558 (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528 n.17 (1983)). The Court therefore held that it was not enough to allege the mere possibility of a claim.

"The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do."). A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that the plaintiff is entitled to relief. *Id.*

## ALLEGATIONS IN THE COMPLAINT

On or around August 17, 2019, Plaintiff began his employment with Defendant as a Grinder through a temporary staffing agency. Am. Compl. ¶ 12, Dkt. No. 12. Shortly thereafter, in December 2019, Plaintiff was directly hired by Defendant as a full-time Grinder. *Id.* at ¶ 13. In March 2020, near the start of the COVID-19 pandemic, Defendant advised Plaintiff that, if he or

2

an immediate family member suspected that they had been in close contact with someone who had tested positive for COVID-19, or if he himself tested positive, Plaintiff was to tell HR or the on-site nurse, stay home, and follow health department guidelines for quarantining. *Id.* at ¶ 15. Plaintiff alleges that Defendant assured him that he would not lose his job if he stayed home to follow quarantine guidelines. *Id.* at ¶ 16.

On October 19, 2020, Plaintiff began to experience coughing, wheezing, and difficulty breathing while at work. *Id.* at ¶ 20. Following his shift, Plaintiff's breathing became increasingly labored, leading him to visit the emergency room where he received a chest x-ray and was tested for COVID-19. *Id.* at ¶ 21. The next day, Plaintiff developed a fever and informed Lindsey Turscott, Defendant's HR generalist, that he was experiencing COVID-19 symptoms and that he had been tested for it. *Id.* at ¶ 22. Turscott informed Plaintiff that he should remain at home and not return to work until he received his results. *Id.* On October 23, 2020, Plaintiff received a positive test for COVID-19 and was advised by his healthcare provider to self-quarantine for fourteen days following the onset of his symptoms. *Id.* at ¶ 23. Plaintiff further alleges that his healthcare provider advised him of a "recommended regimen of continuing treatment" to alleviate his COVID-19 symptoms. *Id.* at ¶ 25.

Plaintiff called Turscott and informed her that he had received a positive diagnosis, to which Turscott responded by requiring Plaintiff's healthcare provider to fax the positive test result directly to Defendant. *Id.* at ¶¶ 27–28. After Turscott received the test result, she informed Plaintiff that he should return to work when his quarantine was over but did not set a specific date on which he was eligible to return to work. *Id.* at ¶ 29. Seeking clarification, Plaintiff left a voicemail message for Turscott in which he informed her that, although his quarantine period was ending and he was due to return to work on Monday, his child had just been tested for COVID-19,

and he wanted clarification as to whether and when he should return to work. *Id.* at ¶ 30. The complaint does not indicate whether Plaintiff received a response to this message.

Plaintiff returned to work on November 2, 2020, fourteen days after the onset of his symptoms. *Id.* at ¶ 31. While at work, however, he was instructed to see the on-site nurse, who informed him that he was still subject to quarantine and should leave work because he should have calculated his fourteen days from the date of his positive test, not from the onset of symptoms. *Id.* at ¶¶ 32–33. After returning home and quarantining for an additional three days, Plaintiff called Turscott, again seeking to clarify when he could return to work. *Id.* at ¶ 37. However, on November 6, 2020, Turscott informed Plaintiff that his quarantine had concluded on October 30, 2020, and that Defendant had terminated his employment effective November 2, 2020, for job abandonment. *Id.* Plaintiff objected to his termination, allegedly by informing Turscott that he was instructed to remain in quarantine until November 6, 2020, that he was not scheduled to work during the days he supposedly failed to call in sick, and that he had returned to work on November 2, 2020, until he was directed to return to quarantine. *Id.* at ¶ 39. Plaintiff alleges that Defendant failed to provide him with any FMLA leave request forms or other documentation to advise Plaintiff of his rights under the FMLA. *Id.* at ¶ 41. As a result, Plaintiff brings claims for interference and retaliation under the FMLA and for promissory estoppel under Wisconsin law.

## ANALYSIS

"The FMLA entitles any eligible employee suffering from a serious health condition that renders him unable to perform the functions of his position to twelve workweeks of leave during each twelve-month period." *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006) (citing 29 U.S.C. § 2612(a)(D)). The FMLA makes it unlawful for any employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" rights under the FMLA. 29 U.S.C. § 2615(a)(1).

It also makes it unlawful for any employer to retaliate against an employee who exercises their FMLA rights. 29 U.S.C. § 2615(a)(2). Both theories of recovery have been advanced here.

"To prevail on an FMLA interference claim, an employee need only show that his employer deprived him of an FMLA entitlement; no finding of ill intent is required." *Burnett*, 472 F.3d at 477 (citing *Hoge v. Honda Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004)). Accordingly, Plaintiff must establish that: "(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Id.* Defendant argues that Plaintiff has not satisfied his pleading burden with respect to the third element; whether he is entitled to leave under the FMLA. To satisfy his burden at this stage, Plaintiff must allege facts that plausibly establish that he "(1) is afflicted with a 'serious health condition' and (2) that condition renders him unable to perform the functions of his job." *Id.* at 477–78 (citing 29 U.S.C. § 2612(a)(1)(D)). Defendant asserts that Plaintiff has not plausibly alleged that he had a serious health condition or that it rendered him unable to perform the functions of his job.

A "serious health condition" within the meaning of the FMLA includes an "illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a healthcare provider." 29 U.S.C. § 2611(11). Relevant here, continuing treatment by a healthcare provider includes "[t]reatment by a healthcare provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the healthcare provider." 29 C.F.R. § 825.11(a)(2). A regimen of continuing treatment includes, for example, "a course of prescription medication . . . or therapy requiring special equipment to resolve or alleviate the health condition." 29 C.F.R. § 825.113(c). However, "[a] regimen of continuing treatment that includes the taking of over-the-

5

counter medications such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a healthcare provider is not, by itself, sufficient to constitute a regimen of continuing treatment for purposes of FMLA leave." *Id.* Furthermore, conditions such as the "common cold, the flu, ear aches, upset stomach, minor ulcers, [and] headaches other than migraine . . . are examples of conditions that do not meet the definition of a serious health condition and do not qualify for FMLA leave." 29 C.F.R. § 825.113(d).

In his amended complaint, Plaintiff alleges that his COVID-19 diagnosis "constituted a serious health condition," and that his healthcare provider advised him of a "recommended regimen of continuing treatment to alleviate" his symptoms. Am. Compl. ¶¶ 25, 40. Plaintiff's most specific allegations describe his experiencing of symptoms including "coughing, wheezing, and difficulty breathing." *Id.* at ¶ 20. Defendant argues that Plaintiff's failure to allege a specific regimen of treatment that consisted of more than over-the-counter medications, bed-rest, and fluids renders his complaint legally insufficient to state a claim under the FMLA.

Defendant is correct that such a regimen, by itself, would not be sufficient to support a claim that Plaintiff had a serious medical condition. But that is not all the amended complaint alleges. The complaint also alleges that Plaintiff's health care provider directed him to self-quarantine for a period of fourteen (14) days following the onset of his symptoms. *Id.* at ¶ 23. The complaint also alleges that Defendant itself implemented a policy requiring employees who tested positive for COVID-19 to self-quarantine and that Plaintiff was instructed by Defendant's on-site nurse, with the apparent concurrence of Turscott, to not return to work until his quarantine was completed on November 6, 2020. *Id.* at ¶¶ 15–17, 33–36. These additional allegations are sufficient to withstand a motion to dismiss challenging whether Plaintiff had a serious health condition. Indeed, if true, they may constitute grounds to equitably estop Defendant from claiming

6

otherwise. *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579, 582 (7th Cir. 2000). And the fact that Plaintiff was required to stay home, regardless of his symptoms, rendered him unable to perform the essential functions of his job. These allegations are therefore sufficient to state a claim under the FMLA, at least at this stage of the proceeding. Defendant's motion to dismiss Plaintiff's FMLA claims is denied.

Defendant's motion will also be denied as to Plaintiff's claim for promissory estoppel. Promissory estoppel is an equitable remedy recognized in Wisconsin that allows the enforcement of a promise that reasonably induces action or forbearance under circumstances where enforcement is necessary in order to avoid injustice. *Hoffman v. Red Owl Stores, Inc.*, 26 Wis. 2d 683, 698, 133 N.W.2d 267 (1965). Here, Plaintiff alleges that he was separately directed by the on-site nurse, the HR director, and his shift supervisor to go home until his quarantine was completed. The amended complaint further alleges that Defendant had previously assured employees that they would not be terminated for following directions to quarantine during the pandemic. These allegations are sufficient to state a claim for promissory estoppel under Wisconsin law.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Dkt. No. 14) is **DENIED**. The Clerk is directed to set this matter on the Court's calendar for a Rule 16 telephone conference to discuss further scheduling.

**SO ORDERED** at Green Bay, Wisconsin this 12th day of May, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge